IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| PATRICIA RECKLEY,<br><br>                    Plaintiff,<br><br>vs.<br><br>THE GOODMAN GROUP, dba<br>VILLAGE HEALTH CARE CENTER;<br>DEE STRAUSS; TOSHUA<br>KRUSHENSKY; ANNIE WAYLETT;<br>DEANNA HARRIS,<br><br>                    Defendants. | CV 19-119-M-KLD<br><br><br>ORDER |

Pro se Plaintiff Patricia Reckley brings this action against The Goodman Group, dba Village Health Care Center, and the individual Defendants alleging claims under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA") and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. This matter comes before the Court now on motions to dismiss for lack of subject matter jurisdiction and failure to state claim for relief pursuant to Federal Rule Civil Procedure 12(b)(1) and (6). (Docs. 17 and 19). In addition, Reckley moves for leave to file an amended complaint. (Doc. 41).

## I.    **Background**[1]

---

[1] In light of Reckley's pro se status, the Court refers to both the original Complaint

1

On July 16, 2019, Reckley filed this action naming Village Health Care

Center and its Executive Director Dee Strauss, Director of Nursing Toshua

Krushensky, and Social Services Director Annie Waylett as defendants. Reckley

also named Deanna Harris, a physical therapist now employed by Infinity Rehab,[2]

as a defendant. (Doc. 2). Reckley alleged violations of the ADA, the Rehabilitation

Act, the Civil Rights of Institutionalized Persons Act, the Nursing Home Reform

Act, and the "resident rights" set forth in 42 C.F.R. § 483.10. (Doc. 2). Because

Reckley is proceeding in forma pauperis pursuant to 28 U.S.C. § 1915, the Court

prescreened her Complaint and determined that she did not have a viable claim for

relief under the Civil Rights of Institutionalized Persons Act, the Nursing Home

Reform Act, and 42 C.F.R. § 483.10. The Court gave her until November 7, 2019

within which to address various pleading deficiencies related to her ADA and

Rehabilitation Act claims, both of which survived the prescreening process. (Doc.

6).

_____

(Doc. 2), supplement (Doc. 5), and Amended Complaint (Doc. 9) for purposes of
reciting the factual allegations.

[2]  Infinity Rehab has entered an appearance in the case for the limited purpose of
responding to Reckley's motion for leave to file amend her complaint. (Doc. 20 at
6 n.1; Doc. 45).

2

On November 12, 2019, Reckley filed an amended pleading identifying The Goodman Group as The Village Health Care Center's parent company,[3] and again alleging discrimination and retaliation claims against Defendants under the ADA and the Rehabilitation Act. (Doc. 9). The Village is a residential rehabilitation and long-term care facility, which receives federal funding through Medicare and Medicaid. (Doc. 9 at ¶¶ 5, 7). Reckley is a wheelchair-bound paraplegic who relies heavily on adaptive devices to complete basic activities of daily living, and has occupied a private room in the rehabilitation section at The Village since August 2017. (Doc. 9 at ¶¶ 5, 8). Reckley asserts there are only two rooms in The Village's rehabilitation section that can accommodate her functional needs, including the one she has occupied since August 2017, and none in the long-term care section. (Doc. 9 at 2).

Reckley alleges that between October 2018 and July 2019, staff members at The Village made three attempts to transfer her to a room in the long-term care section that did not have a wheelchair accessible bathroom, bed poles, and other adaptive equipment necessary to accommodate her functional needs. (Doc. 9 at ¶¶ 1, 5-6; Doc. 2 at 9). Reckley claims that Strauss directed her physical therapist,

---

[3] Defense counsel states that the correct name for this Defendant is "The Village Health & Rehabilitation f/k/a Village Health Care Center." (Doc. 18 at 2). The Court will refer to this Defendant as "The Village."

Harris, to choose a new room for Reckley, and that Harris did not allow her to examine any of the proposed new rooms. (Doc. 2 at 11). Instead, Harris chose "the room she thought was most appropriate," but told Reckley it was "the best of the worst" (Doc. 2 at 11) and was "not accessible." (Doc. 2 at 9). At one point, Strauss directed staff to forcibly evict Reckley from her room by removing all of her personal items, including necessary toileting materials, and withholding them in an attempt to coerce her into moving to a different room. (Doc. 9 at ¶ 4).

Beginning in August 2019, The Village began billing Reckley at a rate of $50 per day as a "private room" fee. (Doc. 9 at 3-4). Reckley asserts that The Village began charging her this additional fee in a further attempt to coerce her to move to another room and as retaliation for filing this lawsuit in July 2019. (Doc. 9 at 3; Doc. 5 at 1). Reckley alleges that Defendants' conduct is ongoing, and they "continue to harass [her] for trying to stay in a room suited to her needs." (Doc. 9 at 4).

Reckley brings discrimination and retaliation claims under Titles III and V of the ADA, respectively, and Section 504 of the Rehabilitation Act. Generally speaking, she alleges that Defendants discriminated against her based on her disability by attempting to move her to a room that would not accommodate her

functional needs, and retaliated against her for exercising her rights under the ADA by charging her the $50 daily private room fee.

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to lack of standing, and Rule 12(b)(6) failure to state claim for relief.[4] (Doc. 17). Harris has also filed a separate motion on her own behalf to dismiss for lack of subject matter jurisdiction and failure to state a claim. (Doc. 19). Reckley, in turn, has filed a motion for leave to amend her complaint to: (1) identify The Village by its correct name; (2) dismiss the four individual Defendants; (3) add Harris's employer, Infinity Rehab, as a Defendant; and (3) add claims under the Fair Housing Act. (Doc. 41).

## II.   Subject Matter Jurisdiction

Defendants move to dismiss Reckley's ADA claims for lack subject matter jurisdiction on the ground that she has not alleged an injury-in-fact sufficient to confer Article III standing.[5] (Doc. 17).

---

4  Defendants explain that Harris's employer changed during the time period at issue, and take the position that their "motion to dismiss applies equally to Harris as to all other defendants." (Doc. 18).

5  In her motion for leave to amend her complaint, Reckley seeks to "remove" the individual defendants and proceed solely against their employers. (Doc. 42 at 2). Because Reckley will be given leave to amend her complaint for the reasons discussed below, the Court will refer to The Village as the moving defendant for purposes of discussing the pending motion to dismiss. (Doc. 17).

## A.    Legal Standard

A defendant may pursue a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) either as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A facial challenge to the jurisdictional allegations is one which contends that the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

Resolution of a facial challenge to jurisdiction depends on the allegations in the complaint, and does not involve the resolution of a factual dispute. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a facial challenge, the court must assume the allegations in the complaint are true and "draw all reasonable inferences in [plaintiff's] favor." *Wolfe*, 392 F.3d at 362; *Whisnant v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005).

Here, The Village has mounted a facial attack on jurisdiction. It takes the position that the allegations in the pleadings are insufficient on their face to

establish that Reckley has standing, as required for the Court to have subject matter

jurisdiction over her claims. See *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d

939, 954 (9th Cir. 2011) (a court lacks subject matter jurisdiction if the plaintiff

does not have standing to bring the claims asserted). Because The Village is

making a facial challenge to jurisdiction, the Court takes the allegations in

Reckley's pleadings as true, draws all reasonable inferences in Reckley's favor,

and construes the pro se pleading liberally. *Wolfe v. Strankman*, 392 F.3d 358, 362

(9th Cir. 2004).

### B.    Standing

A disabled individual claiming discrimination under the ADA "must satisfy

the case or controversy requirements of Article III by demonstrating [her] standing

to sue at each stage of the litigation." *Chapman v. Pier 1 Imports*, 631 F.3d 939,

946 (9th Cir. 2011). To establish standing, Reckley "must demonstrate that [she]

has suffered an injury-in-fact, that the injury is traceable to [The Village's] actions,

and that the injury can be redressed by a favorable decision." *Chapman*, 631 F.3d

at 946. "In addition, to establish standing to pursue injunctive relief, which is the

only relief available to private plaintiffs under the ADA, [Reckley] must

demonstrate a 'real and immediate threat of repeated injury' in the future."

*Chapman*, 631 F.3d at 946 (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).

For purposes of the present motion, The Village focuses exclusively on the injury-in-fact element of standing. To satisfy this threshold element, "a plaintiff must have suffered an invasion of a legally protected interest" that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (quotations and citations omitted). In the ADA context, a plaintiff suffers an injury-in-fact if she personally encountered the barrier complained of, or had actual knowledge of the barrier complained of and was deterred from visiting the public accommodation because of that barrier. *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002).

The Village maintains that in the ADA context, a plaintiff must actually encounter a noncompliant barrier in order to suffer an injury-in-fact for standing purposes. The Village argues that Reckley did not suffer an injury-in-fact because, taking her allegations as true, she was never moved to a different room and therefore could not have encountered any noncompliant barriers. The Village also notes that, as alleged in the pleadings, Reckley never even visited any of the

proposed new rooms.[6]  Because Reckley does not claim to have personally

encountered any ADA-noncompliant barriers, The Village takes the position that

she cannot demonstrate an injury-in-fact as required to have Article III standing.

While The Village is correct that Reckley does not claim to have personally

encountered any noncompliant barriers, the Ninth Circuit has held a plaintiff need

not actually encounter such a barrier in order to have standing to challenge it under

the ADA. *Pickern,* 293 F.3d at 1136-37. The ADA makes clear that a person with a

disability need not "engage in a futile gesture if such person has actual notice that a

person or organization covered by this subchapter does not intend to comply with

its provisions." 42 U.S.C. § 12188(a)(1). Relying on this "futile gesture" provision,

*Pickern* held that a plaintiff suffers an injury-in-fact for standing purposes when

she has actual knowledge of the barrier complained of and was deterred from

visiting the public accommodation because of that barrier. *Pickern*, 293 F.3d at 11;

see also *Strojnik v. IA Lodging Napa First* LLC, 2020 WL 2838814 *6 (N.D. Cal.

June 1, 2020 (recognizing that "[a]s an alternative to establishing an actual

encounter with a barrier," an ADA plaintiff with actual knowledge of

---

6  Although Reckley argues in her response brief that she did visit one of the new
rooms, she cannot rely on that argument to defeat The Village's motion to dismiss
because she has not alleged those facts in her pleadings.

noncompliant barriers at public accommodation "may establish standing by pleading that he was deterred from visiting the facility in the first place.").

In *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099-1100 (9th Cir. 2017), the Ninth Circuit rejected a "bright-line predicate of a 'personal encounter' with a barrier to access as a requirement for standing under ADA Title III." In that case, the wheelchair-bound plaintiffs called several defendant-owned hotels that provided free local shuttle services and were informed that the hotels did not provide shuttle service for mobility-impaired people. *Civil Rights Education and Enforcement Center*, 867 F.3d at 1097. The plaintiffs alleged that they would have stayed at the hotels but for the failure to provide equivalent shuttle service, and further alleged they intended to, but were deterred from, visiting the hotels in the future based on the hotels' failure to provide wheelchair-accessible shuttle service. *Civil Rights Education and Enforcement Center*, 867 F.3d at 1097. The Ninth Circuit explained that it was not necessary for the plaintiffs to have observed the lack of accommodation firsthand, and found that the "secondhand knowledge" plaintiffs obtained by calling the hotels was sufficient to establish actual knowledge of the allegedly noncompliant barrier. *Civil Rights Education and Enforcement Center*, 867 F.3d at 1097. In other words, "[i]t is the plaintiff's 'actual knowledge' of a

barrier, rather than the source of the knowledge, that is determinative." *Civil Rights Education and Enforcement Center*, 867 F.3d at 1099.

Here, Reckley alleges that her physical therapist, Harris, advised her that her newly assigned room was "not accessible," such that it would presumably compromise her ability to independently carry out activities of daily living. (Doc. 2 at 11). As Reckley describes the events leading up to the filing of this lawsuit, she made clear to Defendants that she was unwilling to move to a room with ADA-noncompliant barriers, but they continued their efforts to coerce her out of her current room. Liberally construing the factual allegations in Reckley's favor, she has sufficiently pled actual knowledge of allegedly ADA-noncompliant barriers and that she was deterred from moving to a different room because of those barriers.

Accordingly, Reckley has adequately pled an injury-in-fact as required to have Article III standing to pursue to her claims under the ADA. Whether any of the rooms Reckley objects to were in fact ADA-noncompliant, and whether Reckley had actual knowledge of that fact as she alleges, remains to be seen. Such issues are beyond the scope of The Village's current challenge to subject matter jurisdiction, however, and are appropriately addressed at the summary judgment stage.

11

## III.   Failure to State a Claim for Relief

### A.   Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court's standard of review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting Rule 8). Although Rule 8(a)(2) does not require "detailed factual allegations," a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 677-78.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

12

As a general rule, the court may not consider any materials outside the pleadings on a Rule 12(b)(6) motion. *Lee v. City Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court may, however, consider documents attached to the complaint, matters that are subject to judicial notice, and documents necessarily relied on by the complaint and whose authenticity no party questions. See *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee*, 250 F.3d at 688-89 (9th Cir. 2001). "[R]ecords and reports of administrative bodies" are subject to judicial notice, and may be considered by the court without converting a Rule 12(b)(6) motion to a motion for summary judgment. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1278, 1282 (9th Cir. 1986).

Where, as here, the plaintiff is proceeding pro se, the court has an obligation "to construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). But even where the plaintiff is proceeding pro se, the complaint should be dismissed if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim." See *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1997). A pro se plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).

13

**B.      Americans with Disabilities Act**

1.      <u>Place of Public Accommodation</u>

Title III of the ADA prohibits discrimination on the basis of disability in any place of public accommodation, see 42 U.S.C. § 12182(a), and Title V prohibits retaliation for engaging in conduct protected under Title III, see 42 U.S.C. § 12203(a) and (b). The Village argues Reckley cannot state a claim for discrimination or retaliation under the ADA because it is not a place of public accommodation, as required for the ADA to apply.

As defined by the ADA, private entities are considered places of public accommodation if they fall into one of twelve listed categories, including hospitals, senior citizen centers, and other social service center service establishments. 42 U.S.C. § 12181(7)(F) and (K). These "public accommodation categories should be construed liberally to afford people with disabilities equal access to the wide variety of establishments available to the nondisabled." *Stiner v. Brookdale Senior Living, Inc.*, 354 F.Supp.3d 1046, 1058 (N.D. Cal. 2019) (internal quotations omitted), motion to certify appeal denied, 383 F.Supp.3d 949 (N.D. Cal. 2019), and aff'd in part and rev'd in part and remanded, 810 F.App'x 531 (9th Cir. 2020).

The Village argues that a place of public accommodation is not where the plaintiff resides, but is a place that the plaintiff visits from time to time, like a

14

convenience store, cruise ship, restaurant, or market. See e.g. *Chapman*, 631 F.3d at 949-50 (discussing ADA cases involving such places of public accommodation). Because it is a residential facility, The Village takes the position that it cannot be considered a place of public accommodation within the meaning of the ADA. At most, The Village maintains, it is a mixed-use facility where only the portion that is open to the public would be considered a place of public accommodation. See e.g. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008) (concluding that the retail portion of a convenience store, which was open to the public, was a place of public accommodation, but the employees-only restroom was not). Because the residents' rooms are not open to the public, The Village argues that portion of the facility is not subject to the requirements of the ADA.

Notably, however, The Village does not cite to any cases in which a similar facility "which provide[s] medical services to the elderly in a residential setting, ha[s] been exempted from ADA compliance." *Stiner*, 354 F.Supp.3d at 1058. In *Stiner*, the court concluded that the services provided at the defendant's assisted living facilities, including "daily assistance for seniors and persons with disabilities in certain activities of daily living, such as preparing meals, shopping, transportation, preparing and taking medication, housekeeping, laundry, bathing, toileting, grooming, dressing, and others" placed them firmly within the ADA.

*Stiner*, 354 F.Supp.3d at 1058. The court rejected the defendant's argument that the assisted living communities were "similar to private apartment complexes that would not fall under the governance of the ADA" and instead concluded that they were public accommodations subject to the ADA. *Stiner*, 354 F.Supp.3d at 1058-59. See also *Montano v. Bonnie Brae Convalescent Hospital, Inc.*, 79 F.Supp.3d 1120 (C.D. Cal. 2015) (nursing home was a place of public accommodation under the ADA); *Hubbard v. Twin Oaks Health & Rehab. Center*, 408 F.Supp.2d 923, 929 (E.D. Cal. 2004) (in a case brought by a disabled nursing home visitor, it was undisputed that a skilled nursing facility was a place of public accommodation under the ADA); *Herriot v. Channing House,* 2009 WL 225418, *6 (N.D. Cal. Jan. 29, 2009) (undisputed that a continuing care retirement community was a place of public accommodation under the ADA).

The ADA's Title III regulations also support categorizing The Village facility as a place of public accommodation. Nursing homes are expressly covered as social service center establishments under 28 C.F.R. § 36.104. The applicable regulatory guidelines provide, in relevant part:

> "[S]ingle room occupancy hotels" may provide social services to their guests, often through the operation of Federal or State grant programs. In such a situation, the facility would be considered a "social service center establishment" and thus covered by the ADA as a place of public accommodation, regardless of the length of stay of the occupants.

> A similar analysis would also be applied to other residential facilities that provide social services, including … nursing homes, residential care facilities, an other facilities where persons may reside for varying lengths of time. Such facilities should be analyzed under the Fair Housing Act to determine the application of that statute. The ADA, however, requires a separate and independent analysis. For example, if the facility, or a portion of the facility, is intended for or permits short-term stays, or if it can appropriately be categorized as a service establishment or as a social service establishment, then the facility or that portion of the facility used for the covered purpose is a place of public accommodation under the ADA.

28 C.F.R. pt. 36, app. C (guidance to 28 C.F.R. § 36.104).

Thus, while The Village proposes that a place of public accommodation is only the portion of a facility that is open to the public, the regulations and guidance make clear that any portion of a social service establishment that is used for the covered purpose – i.e., the provision of social services – is a place of public accommodation. As generally alleged in the pleadings, The Village is a skilled nursing and rehabilitation facility that provides an array of social and health care services to its residents. (Doc. 9). As such, the entire facility, including rooms where those services are provided, might well qualify as a place of public accommodation within the meaning of the ADA. Liberally construing the allegations in the pleadings Reckley's favor, she adequately alleges facts upon which the Court might conclude that The Village facility is a place of public accommodation for purposes of surviving Rule 12(b)(6) dismissal for failure to state a claim.

17

2. <u>Retaliation Claim</u>

To state a claim for retaliation under Title III of the ADA in the public accommodation context, Reckley must allege that (1) she engaged in a statutorily protected activity, (2) an adverse action was taken against her, and (3) there was a causal connection between the adverse action and the protected activity. See *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 (11th Cir. 2003); *Gallagher v. San Diego Unified Port Dist.*, 2009 WL 311120 *6 (S.D. Cal. Feb. 6, 2009).

Reckley alleges that The Village retaliated against her for trying to assert her legal rights under the ADA and filing this lawsuit by charging her a daily $50 room fee. (Doc. 9 at ¶ 8). The Village does not challenge the notion that Reckley allegedly engaged in protected activity by pursuing her rights under the ADA. See *Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 850 (9th Cir. 2004) ("Pursuing one's rights under the ADA constitutes a protected activity."). Focusing instead on the remaining elements, The Village maintains that has not adequately alleged an adverse action, or a causal connection between the adverse action and the protected activity.

"An adverse action is one that is reasonably likely to deter an individual from engaging in a protected activity." *Gallagher*, 2009 WL 311120 at *6 (citing *Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 850 (9th Cir. 2004). See also

*Silva v. Palmdale School District*, 2017 WL 10562758, at *4 (C.D. Cal. Oct. 12, 2017). "A causal link between the protected activity and the defendant's conduct may be inferred when an adverse action closely follows the engagement in a protected activity." *Gallagher*, 2009 WL 311120, at *6 (citing *Pardi*, 389 F.3d at 850). Assuming, as Reckley alleges, that The Village began charging her a daily $50 room fee, such conduct is reasonably likely to deter a disabled person from pursuing her rights under the ADA. And assuming, as Reckley alleges, that The Village began charging her this daily fee in July 2019 – just one month after she filed this lawsuit – a causal link between the protected activity and adverse conduct might be inferred.[7]

The Village legitimately challenges the factual underpinnings of Reckley's allegations. For example, The Village argues it began charging Reckley a private room fee not because she was pursuing her rights under the ADA, but because she refused to move out of a private isolation room that The Village needed to accommodate the short term needs of incoming patients and current residents with potentially infectious or contagious conditions. For support, The Village relies on an order of the Montana Department of Public Health and Human Services, Office

---

[7] To the extent the parties discuss evidence outside the pleadings relating to when and why The Village implemented the room fee, their arguments are appropriately addressed later at the litigation at the summary judgment stage.

of Fair Hearings finding that The Village had shown by convincing evidence that the need for a room change was based on the safe operation of the facility. (Doc. 18-1). While the Court may consider such matters of public record on a Rule 12(b)(6) motion, the DPHHS's decision does not change the fact that, for purposes of stating a claim for relief, Reckley has adequately alleged that The Village retaliated against her for pursuing her rights under the ADA and filing this lawsuit by instituting a $50 daily room fee. Whether Reckley's allegations are supported by the evidence of record is properly addressed later in the litigation at the summary judgment stage.

To the extent Reckley also alleges that The Village retaliated against her by: (1) delaying the delivery of her mail (Doc. 5); and assigning someone other than Harris to be her physical therapist (Doc. 9 at ¶ 3) the Court agrees with The Village that she fails to state a claim for relief. Even taking Reckley's allegations as true, such conduct is not reasonably likely to dissuade a reasonable person from pursuing her rights under the ADA.

## B.      Rehabilitation Act

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The Village argues that Reckley cannot state a claim for relief under the Rehabilitation Act because The Village is not a "program or activity" as defined under § 504. Section 504 defines "program or activity" to include "all the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A). The Village maintains that it is not a department, agency, or other instrumentality of a State or local government, but rather a privately owned entity that receives federal financial assistance when Medicaid or Medicare pays for the services it provides to its residents. (Doc. 18 at 14). The Village relies on *Sharer v. Oregon*, 581 F.3d 1176, 1177-78 (9th Cir. 2009) for the proposition that if a defendant entity is not a department, agency, or other instrumentality of a state or local government, the Rehabilitation Act does not apply.

While *Sharer* concluded that the defendant in that case did not qualify as a program or activity as defined in 29 U.S.C. § 794(b)(1)(A), it did not consider the definitions set forth in the other statutory subsections. Section 794(b)(3)(A)(ii) defines a program or activity to also include "an entire corporation, partnership, or other private organization… [w]hich is principally engaged in the business of

21

providing education, health care, housing, social services, or parks and recreation."

Accordingly, The Rehabilitation Act may apply to privately owned entities,

including nursing homes, assisted living facilities, and other inpatient care

providers. See e.g. *K.M. ex rel. Bright v. Tustin Unified School District*,725 F.3d

1088, 1099 (9th Cir. 2013) (recognizing that "Section 504 governs all entities

receiving federal funds (public or private)."); *Montano*, 79 F.Supp.3d at 1132

(holding a skilled nursing home facility that received federal financial assistance

through Medicare liable under the Rehabilitation Act.).

As alleged in the pleadings, The Village is a skilled nursing home and

rehabilitation facility that receives federal financial assistance through Medicaid

and Medicare. Thus, the fact that The Village is not a department, agency, or other

instrumentality of a state or local government is not dispositive of Reckley's

Rehabilitation Act claim.

Finally, The Village argues briefly that even if The Village is a "program or

activity" under Section 504, the allegations in the pleadings demonstrate that (1)

The Village has not denied her its benefits because she remains in the private room

that accommodates her disability, and (2) even if The Village does move her out of

that room, the complaint and incorporated materials show it would be doing so not

solely by reason of Reckley's disability, but because it needs that room available

for those who need to be isolated because of a contagious or infectious disease. (Doc. 18 at 15).

The Ninth Circuit uses essentially the same standard when evaluating claims under the ADA and the Rehabilitation Act. See *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002), cert. denied 537 U.S. 1104 (2003) ("We examine cases construing claims under the ADA, as well as section 504 of the Rehabilitation Act, because there is no significant difference in the analysis of rights and obligations created by the two Acts."). See also, *Gray v. Golden Gate National Recreation Area*, 2012 WL 13140460 * 4 (N.D. Cal. July 3, 2012) (explaining that "courts have not required futile gestures in other contexts where the applicable statutory scheme did not expressly address 'futile gestures', so the fact that the Rehabilitation Act does not contain precisely the same language as the ADA is not dispositive").

As discussed above, liberally construing the pleadings in Reckley's favor, she has stated a claim for relief under the ADA. Because Reckley has adequately stated a claim for relief under the ADA, she has likewise stated a claim for relief under Section 504 of the Rehabilitation Act. To the extent both parties rely on evidence outside the pleadings to support their respective positions, their

arguments are better addressed later in the litigation at the summary judgment stage.

## IV.   **Motion for Leave to Amend**

Reckley moves for leave to amend her complaint to: (1) identify The Village by its correct name; (2) dismiss the four individual Defendants; (3) add Harris's employer, Infinity Rehab, as a Defendant; and (3) add claims under the Fair Housing Act. (Doc. 41). Reckley did not initially attach a copy of her proposed amended complaint to her motion, as required by Local Rule 15.1. On September 2, 2020, Reckley filed "corrected" motion for leave to amend, with a copy of her proposed amended complaint attached. (Doc. 49).

### A.    The Village

The Village agrees that Reckley incorrectly identified it in her initial pleading as Village Health Care Center, and explains that its correct legal name is Community Nursing, Inc. d/b/a The Village Health & Rehabilitation. The Village explains that if Reckely had alleged any claims upon which relief could be granted, it would not object to allowing Reckley to correct this mistake. (Doc. 43 at 2). The Village also states that if Reckley's complaint were to survive its motion to dismiss, it would not object to Reckely's request to dismiss the individually named Defendants. (Doc. 43 at 2).

24

As discussed above, The Village's motion to dismiss for lack of jurisdiction and failure to state a claim is properly denied. Accordingly, to the extent Reckley moves to amend her complaint to correctly identify The Village and to dismiss the individual defendants, she may do so. To the extent Reckley moves for leave to file an amended complaint adding claims under the Fair Housing Act, The Village opposes her motion on the ground that the proposed amendment would be futile.

Federal Rule of Civil Procedure 15 provides that leave to amend a party's pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This policy should be applied with "extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003), and even more so where the party seeking leave to amend is proceeding pro se. *Eldridge v. Block*, 832 F.2d 1132, 1135. Nevertheless, this policy is subject to several limitations, including "undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Cafasso v. General Dynamics C4 Systems,*, 637 F.3d 1047, 1058 (9th Cir. 2011). Of these factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. Absent prejudice, or a strong showing of any of the remaining factors, there is presumption in favor granting leave to amend. *Eminence Capital*, 316 F.3d at 1052.

Reckley has amended her complaint once, in response to the Court's Order granting her leave to proceed in forma pauperis. The Village does not argue that it will be prejudiced if Reckley is allowed to amend her complaint once more to add a new legal claim at this early stage in the litigation, and does not accuse Reckley of acting in bad faith. Focusing exclusively on the one remaining factor, The Village argues leave to amend because it would be futile to allow Reckley to amend her complaint to add a claim under the Fair Housing Act.

"[L]eave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pacific,* 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)). The Fair Housing Act "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." *Montano*, 79 F.Supp.3d at 1125. The Village argues Reckley's proposed claim under the Fair Housing Act is deficient for the same reason that it argues her ADA claim is deficient, namely, because "she has not suffered an injury-in-fact because she has not encountered any barriers or been denied a reasonable accommodation by simply being asked to consider alternative rooms." (Doc. 43 at 2).

As discussed above, however, taking Reckley's allegations as true and

construing them liberally in her favor, she has adequately alleged an injury-in-fact for purposes of allowing her ADA claim to survive dismissal. At this juncture, the Court does not have sufficient facts and briefing to conclude that it would be futile to allow Reckely to amend her complaint to add a claim under the Fair Housing Act. Whether Reckley's Fair Housing Act theory of liability is viable, and one on which she may ultimately be able to prevail remains to be seen. For present purposes, however, it cannot be said as a matter of law that Reckley can prove no set of facts entitling her to relief.

      B.    <u>Infinity Rehab</u>

Finally, Reckley seeks leave to amend her complaint to add Harris's employer, Infinity Rehab, as a defendant. Infinity Rehab has entered an appearance in the case for the limited purpose of opposing Reckley's motion. At the time Infinity Rehab entered its appearance, Reckley had not submitted her proposed amended complaint as required by Local Rule 15.1. As a result, Infinity Rehab was placed in the position of having to guess what Reckley's claim against it would be. Infinity Rehab argued that if Reckley was seeking leave to name it as a party for the purpose of asserting a claim against under the Fair Housing Act, she had not pointed to or pleaded enough facts to support doing so.

Approximately two weeks later, Reckley filed a "corrected" motion to

amend, with her proposed amended complaint attached. (Doc. 49). With respect to

Infinity Rehab, Reckley's proposed pleading alleges as follows:

> The only allegation pertaining to Infinity Rehab is that [it] subjected [her] to loss of pain-relieving therapy and retaliation when her regular therapist [Harris] would no longer provide those specialized services after learning that Plaintiff filed suit with this Court. Plaintiff cited 42 USC 12203(a)(b) prohibiting retaliation, but retaliation is also covered under the Rehabilitation Act at 45 C.F.R. 80.7(e), 29 C.F.R. 32.45. Infinity may also be found to be liable for negligence because 5 months passed after changing therapists, before they considered Plaintiff's pain-relieving needs.

As Reckley's proposed pleading makes clear, she is not seeking to add Infinity

Rehab for the purpose of asserting a Fair Housing Act claim against it. Rather, she

is seeking proceed with the retaliation claim she previously pled against Harris.

To establish a prima facie case of retaliation under the ADA, a plaintiff must

establish three elements: (1) engagement in protected opposition to ADA

discrimination or participation in an ADA proceedings; (2) an adverse action

contemporaneous or subsequent to such protected activity; and (3) a causal

connection between the protected activity and the adverse action. *Shotz v. City of

Plantation*, 344 F.3d 1161, 1180 (11th Cir. 2003). To succeed on an ADA

retaliation claim, a plaintiff must present sufficient direct evidence of retaliation or

proceed under a burden-shifting approach, by first establishing a prima facie case

and then shifting the burden to the defendant. *Rhoads v. F.D.I.C.*, 286 F.Supp.2d

532, 539 (D. Md. 2003). The Ninth Circuit applies a "but-for" test to analyze

causation under the ADA. See *T.B. ex. rel. Brenneise v. San Diego Unified School Dist.*, 806 F.3d 451, 473 (9th Cir. 2015); *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013).

Infinity Rehab argues Reckley's proposed amendment would be futile because Reckley cannot meet the but-for standard of pleading against Infinity Rehab, just as she could not meet the but-for standard against Harris. Infinity Rehab argues there is a self-evident and non-retaliatory reason for Infinity Rehab assigning another licensed physical therapist to work with Reckley. Infinity Rehab maintains that Reckley created a conflict of interest by suing Harris, and explains that it would have to transfer her care from Harris to a different physical therapist no matter what her claim was and regardless of whether she had engaged in ADA protected activity. Because there was a self-evident, non-retaliatory, and legitimate reason for it to transfer Reckley to another licensed physical therapist, Infinity Rehab argues Reckley cannot establish but-for causation.

While Infinity Rehab may well be correct, this argument is problematic for purposes of assessing futility. To determine whether a proposed amendment would be futile, the Court must determine whether the amended pleading would survive a motion to dismiss for failure to state a claim upon which relief could be granted. Infinity Rehab's argument that it would have transferred Reckley to a new physical

therapist regardless of the nature of her lawsuit necessarily goes beyond the scope of the pleadings and would properly be raised on summary judgment.

Incorporating Harris's brief by reference (Doc. 45 at 8), Infinity Rehab also takes the position that Reckley has not alleged sufficient facts to show that it took an adverse action against her. On this point, the Court agrees. In the context of a retaliation claim, an "[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the…action in question as adverse." *Shotz*, 344 F.3d at 1181. In addition, to be adverse, a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,, 68 (2006)).

As proposed, Reckley's amended complaint would allege that it was retaliation for Infinity Rehab to transfer her care to a different physical therapist. These allegations do not support an inference that providing her with a different physical therapist was an adverse action, as required to state a claim for retaliation. Reckley does not allege facts supporting an inference that she was harmed by having her care transferred to a different physical therapist, and Infinity Rehab's alleged conduct was not enough to dissuade a reasonable person from engaging in

protected activity. Because it would thus be futile to allow Reckley to add her proposed retaliation claim against Infinity Rehab, Reckley's motion for leave to amend is denied to the extent she seeks to add Infinity Rehab as a party.[8]

## V.   Conclusion

For the reasons discussed above,

IT IS ORDERED that:

(1) Defendants' Motion to Dismiss (Doc. 17) is DENIED.

(2) Harris's Motion to Dismiss (Doc. 19) and Plaintiff's motion for leave to file a sur-reply (Doc. 35) are DENIED AS MOOT.

(3) Plaintiff's Motion for Leave to Amend (Doc. 41) and Corrected Motion for Leave to Amend (Doc. 49) are GRANTED to the extent that Plaintiff seeks to correctly identify The Village, dismiss the individual defendants, and add a claim against The Village under the Fair Housing Act, but denied to the extent she seeks to add Infinity Rehab as a defendant and in all other respects.[9] On or before

---

[8]  To the extent Reckley seeks leave to add allegations of negligence against Infinity Rehab, she has not pled sufficient facts to support this new theory of liability and, under the circumstances otherwise alleged in the complaint, this deficiency cannot be cured by amendment.

[9] See *Armstrong v. Hawaiin Airlines, Inc.*, 2019 WL 1645192, at **2-3 (D. Haw. Apr. 16, 2019) (a motion to amend a complaint to add a new defendant is a nondispositive matter within the meaning of 28 U.S.C. § 636(b)(1)).

October 16, 2020, Reckley shall file her amended complaint (Doc. 49-1), modified only to eliminate Infinity Rehab as a proposed party.

(3) Plaintiff's unopposed Motion for Leave to File Under Seal (Doc. 34), in which she seeks leave to file her medical records used as supporting documents in the case, is GRANTED.

DATED this 5th day of October, 2020.

Kathleen L. DeSoto
United States Magistrate Judge